# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Habeeb Abdul Malik, | ) | C/A No. 5:11-1064-RBH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | Report and Recommendation |
| v. | ) | |
| | ) | |
| James E. Sligh, Jr.; Jannita Gaston; Bernard McKie; Jon E. | ) | |
| Ozmint; Bill Byars; Vaughn Jackson; Robert E. Ward; | ) | |
| Travis Reese, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on the Motion for Partial Summary Judgment filed by Plaintiff on November 16, 2011, and the Motion for Summary Judgment filed by Defendants on January 6, 2012. ECF Nos. 44, 54. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on January 9, 2012, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response to Defendants' Motion for Summary Judgment. ECF No. 56. Defendants responded to Plaintiff's Motion for Partial Summary Judgment on January 6, 2012. ECF No. 55. Plaintiff responded to Defendants' Motion for Summary Judgment on February 6, 2012, Defendants replied on March 19, 2012, and Plaintiff filed a sur-reply on April 2, 2012, making the Motions for Summary Judgment ripe for consideration. ECF Nos. 59, 66, 68. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d)

___

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

and (e), D.S.C. Because these motions are dispositive, a Report and Recommendation is entered for the court's review.

I.      Factual and Procedural Background

Plaintiff Habeeb Abdul Malik,[2] an inmate housed at Kirkland Correctional Institute, filed his initial Complaint on May 4, 2011.  ECF No. 1.  Plaintiff submitted an Amended Complaint on June 27, 2011, adding Travis Reese as an additional Defendant.  ECF No. 13.  Plaintiff alleges a number of constitutional and other deprivations against Defendants, including violation of his due process rights with respect to his continued confinement in the Maximum Security Unit ("MSU"); denial of medical care; and excessive force. ECF No. 13 at 5.  Plaintiff specifically alleges that on January 15, 2004 he was transferred to MSU at Kirkland Correctional Institution and subsequently charged with assault on a correctional employee, hostage-taking, and rioting.  *Id.*  Plaintiff contends that on February 10, 2004, an MSU Review Committee approved his "admittance to MSU" and that this approval was affirmed by Defendant Ward. *Id.* Plaintiff avers that the basis for his placement into MSU custody was Plaintiff's alleged participation in an assault on a correctional employee and hostage-taking during the January 15, 2004 riot at Broad River Correctional Institution.  *Id.* The disciplinary report included four charges: riot, hostage-taking, inciting/creating a disturbance, and striking an employee with/without a weapon. ECF 59-9 at 5.  Plaintiff avers that on February 10, 2004, in a "proper disciplinary hearing," he was found not guilty of assault on a correctional employee and he was subsequently cleared of the hostage-taking charges. *Id.*, *see also* ECF No. 59-9 at 5-6.  Plaintiff contends that he learned in October 2009 and January 2010 that Defendants were still using the charges of assault on a correctional employee and hostage-taking at Plaintiff's review hearings to

---

[2] Plaintiff was formerly known as Ron Nicholas.  Many of the documents included as exhibits by both parties refer to Plaintiff under the Nicholas moniker.

continue Plaintiff's confinement in MSU, despite the fact that Plaintiff was cleared of those charges. *Id.* Plaintiff asserts that in 2007 and in 2010 he was recommended for release from MSU by the Kirkland Case Management Committee. ECF No. 13 at 6. In 2007, and again in 2010, the MSU Review Committee met and recommended Plaintiff remain in MSU "based upon [Plaintiff's] active participation in the hostage-taking and assault on staff at the January 2004 Broad River C.I. riot and [his] poor adjustment in the MSU." ECF No. 59-9 at 8-9. Defendant Ward signed these recommendations. *Id.* Plaintiff complains that Defendant Ward denied Plaintiff's release on both occasions, basing his denial on misconduct charges from which Plaintiff has been cleared. *Id.*

Plaintiff also alleges that on June 7, 2010, he asked Defendant Reese, supervisor of MSU, to see the Major of MSU security because "a mentally ill inmate was spreading excrement and blood all over his cell walls and also throwing it onto the wing area." ECF No. 13 at 9. This inmate was housed in Plaintiff's vicinity, and would also scream and bang loudly on his toilet, keeping Plaintiff awake. *Id.* Plaintiff contends that he wanted to speak to the Major because Defendant Reese had failed to take any corrective action to address the problems. *Id.* Plaintiff contends that he continued to ask to speak to the Major, from 8 a.m. to 10 p.m., to no avail. ECF No. 13 at 9-10. Plaintiff contends that at 1:15 pm on June 7, 2010 he knocked on his cell window to ask the guards for some assistance[3] and that Defendant Reese came up to Plaintiff's cell shouting angrily, "Oh you trying to break my window." ECF No. 13 at 10. Plaintiff alleges that he stopped knocking on his window at that time, and approximately two minutes later, Defendant

---

[3] Plaintiff contends that inmates are permitted to knock on their door or wall for assistance when no wing officer is present on the unit wing. ECF No. 13 at 10.

Reese discharged a large container of tear gas[4] into Plaintiff's cell.  *Id.*   Plaintiff contends that "no directives were ever given to [him] and he does not know why he was maced." *Id.*  Plaintiff states that he was maced at approximately 1:15 pm and he was not permitted to shower or to wash the mace from his skin and eyes.  ECF No. 13 at 11.  Plaintiff alleges that he was forced to stay in his cell with skin and eyes burning and breathing mace fumes for almost six hours before he was seen by Nurse Vernon Lassiter at approximately 7:00 p.m. *Id.* Plaintiff states that he asked Lassiter for a container of water to bathe, and Lassiter instructed the guards to permit him to shower.  *Id.* at 11-12.  Plaintiff alleges that he was not allowed to shower until the next day, June 8, 2010.  ECF No. 13 at 12.  Plaintiff requests a declaratory judgment stating Defendants Sligh, Gaston, McKie, Ward, Jackson, Ozmint and Byars violated his constitutional rights; an injunction ordering his release from MSU custody and modification of SCDC Policy OP-22.11; compensatory damages in the amount of $127,750.00 jointly and severally against Defendants Sligh, Gaston, McKie, Jackson, and Ward for the violation of Plaintiff's due process rights; compensatory damages in the amount of $25,000 jointly and severally against Defendants Ozmint and Byars for injury sustained due to the enforcement of an unconstitutional policy; compensatory damages in the amount of $15,000 against Defendant Reese for physical pain and suffering; and punitive damages in the amount of $3,000 against all Defendants.   ECF No. 13 at 14-15.

II.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.

---

[4] Plaintiff refers to the chemicals deployed by Defendant Reese alternatively as tear gas and mace.   Mace is the genericized trademark of brand name Chemical Mace; the product's popularity led to use of the term mace for all defense sprays regardless of composition.  See http://en.wikipedia.org/wiki/mace_(spray) (last visited July 25, 2012).

R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case*, see, e.g.*, *Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III. Analysis

A. Defendants' Motion for Summary Judgment

1. Failure to Exhaust

Defendants contend that they are entitled to summary judgment on Plaintiff's excessive use of force and denial of medical care claims because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e. ECF No. 54-1 at 3-8. Defendants concede that Plaintiff has exhausted his remedies for the 2010 due process claim.[5] ECF No. 66 at 2. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "'need not meet federal standards', nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and

_____

[5] Defendants also argued Plaintiff failed to exhaust his administrative remedies for his 2007 claim, and further asserted the 2007 claim is barred by the statute of limitations. In response, Plaintiff stated he used the 2007 claim as an example and he "direct[ed] the court focus on [the January 2010] claim." ECF 59 at 6.

not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). However, '[d]efendants may . . . be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures.'" *Stenhouse v. Hughes*, C/A No. 9:04-23150-HMH-BHH, 2006 WL 752876, at *2 (D.S.C. Mar. 21, 2006) (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)).

Defendants offer the affidavit of Ann Hallman, SCDC Branch Chief for the Inmate Grievance Branch, who attests that Plaintiff has not exhausted his excessive use of force and denial of medical care claims. ECF No. 54-3 at 1. Hallman explains that Plaintiff filed a Step 1 grievance on June 22, 2010, Grievance Number MSU-131-10, raising issues related to the June 7, 2010 gassing incident with Defendant Reese. *Id.* Warden Bernard McKie denied Plaintiff's Step 1 Grievance on July 2, 2010. ECF No. 54-3 at 1-2. Plaintiff received a copy of Warden McKie's decision on July 12, 2010; therefore, he had five calendar days to appeal the warden's decision by filing a Step 2 Grievance. ECF No. 54-3 at 2. Plaintiff submitted a Step 2 Grievance on July 21, 2010, which was signed by Plaintiff on July 20, 2010; this Step 2 Grievance was returned to Plaintiff as untimely. *Id.* Defendants contend that Plaintiff therefore failed to exhaust his administrative remedies as to all claims arising out of the June 7, 2010 incident. ECF No. 54-1 at 5.

Plaintiff responds to Defendants' arguments and states that the record does not support that he failed to exhaust his use of force claim. ECF No. 59 at 2. Plaintiff admits that his Step 2 Grievance was due on July 17, 2010 and that he did not file his Step 2 until July 20, 2010. ECF

No. 59 at 2-3. Plaintiff contends, however, that this delay was not his fault, but that of the Grievance Coordinator. *Id.* Plaintiff alleges that, on July 13, 2010, he sent a Request to Staff Member form and his Step 2 Grievance to the Grievance Coordinator requesting assistance with obtaining additional information and also additional time to submit his Step 2 Grievance. *Id.*; ECF No. 59-1 at 2. The Grievance Coordinator did not respond to Plaintiff's request or forward Plaintiff's Step 2 Grievance back to him until July 19, 2010, two days after Plaintiff's Step 2 Grievance was due. ECF No. 59 at 2. Plaintiff contends that he could not file his Step 2 Grievance prior to July 19, 2010, because the Grievance Coordinator had his grievance in her possession. *Id.* Plaintiff avers that the Grievance Coordinator had "ample time to return Plaintiff's Step 2 and disposition to Plaintiff's request before July 17, 2010." ECF No. 59 at 2-3. Plaintiff states that even after receiving the late response, that he still made "an honest attempt to submit the Step 2" on July 20, 2010, exactly one day after receiving his Step 2 Grievance and the staff member disposition regarding his document and extension requests on July 19, 2010. ECF No. 59 at 2-3.

In response, Defendants contend that SCDC's policy does not allow an inmate to seek any extension of the five-day appeal deadline. ECF No. 66 at 3. Defendants also argue that Plaintiff knew or should have known that he needed to file his appeal by July 17, 2010, and should have done so despite the fact he did not receive the requested incident report or a response to his request for an extension. ECF No. 66 at 4. Additionally, Defendants contend that there is no evidence to support Plaintiff's statement that he gave his Step 2 Grievance to the Grievance Coordinator because the Request to Staff Member Form makes no mention of attaching or enclosing a Step 2 Grievance. *Id.*

Considered in the light most favorable to Plaintiff, the undersigned finds that Defendants appear to have inhibited Plaintiff's ability to use the grievance system by failing to timely respond to Plaintiff's request for documents and an extension. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Stenhouse*, 2006 WL 752876 at *2 ("[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies."). Because it appears that prison officials thwarted Plaintiff's efforts to exhaust his administrative remedies with regard to Plaintiff's excessive force claim, Defendants should not be allowed to raise failure to exhaust as an affirmative defense to that claim.

### 2. Due Process Claims

#### a. Plaintiff's Liberty Interest

Defendants submit that Plaintiff's due process claims should be dismissed because Plaintiff has not shown that any liberty interest has been implicated. ECF No. 54-1 at 8. Generally, prisoners do not have a constitutional right to demand to be housed in one prison verses another. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Under the Supreme Court's pronouncement in *Sandin v. Conner*, 515 U.S. 472 (1995), a liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Thus, the due process inquiry must focus on the

nature of the deprivation alleged. *Id.* Following the reasoning of the Supreme Court in *Sandin*, the Fourth Circuit decided *Beverati v. Smith*, 120 F.3d 500 (4th Cir. 1997), and held that a liberty interest was not implicated when plaintiffs were placed in administrative segregation, because "although the conditions [described by plaintiffs] were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.* at 502–04.

The analysis in *Beverati* requires the court to conduct a fact-specific examination to determine if the conditions Plaintiff describes give rise to a liberty interest. The Supreme Court in *Wilkinson v. Austin,* 545 U.S. 209 (2005), held that, in order to measure whether an inmate's new custodial situation imposes "an atypical and significant hardship within the correctional context," it must be measured against a "baseline." *Wilkinson,* 545 U.S. at 223–24. While *Wilkinson* did not establish what this "baseline" should be, the Fourth Circuit uses the conditions "imposed on the general population" as the baseline for its analysis. *Beverati*, 120 F.3d at 504.

Plaintiff contends that he does have a liberty interest in matters of disciplinary action, classification, and housing, and that he has introduced evidence to create an issue of fact as to whether his conditions of confinement amount to an "atypical and significant hardship in relation to the ordinary incidents of prison life." ECF No. 59 at 8. Plaintiff argues that he has offered evidence that the conditions in South Carolina's MSU mimic those in the Ohio MSU discussed in *Wilkinson.* ECF No. 59 at 9. Plaintiff attests, in support of his atypical-and-significant-hardship argument, that inmates at MSU have restrictions on telephone calls, reading material, and property; are prohibited from attending religious services; have no vocational or educational programs; have no rehabilitative programs; have no ability to earn work credits; are limited to

one hour of daily exercise while shackled; have excessive strip searches; are limited to no-contact visitation; and have an indefinite duration of confinement. ECF No. 59-3 at 12-16; *see also* Defs.' Answer to Pl.'s Req. for Admis., ECF No. 59-4. In response to this argument, Defendants do not introduce any evidence concerning the conditions of Plaintiff's confinement as compared to the ordinary incidents of prison life. Instead Defendants cite to *Stroman v. Patterson*, No. 2:10-10-JFA-RSC, 2011 WL 846575, at *1 (D.S.C. Mar. 9, 2011), and argue that *Stroman* concluded that the inmate's placement in MSU did not implicate a liberty interest. ECF No. 54-1 at 8. In *Stroman*, the court specifically distinguished plaintiff Stroman's situation from that of the plaintiff in *Wilkinson*, noting that "plaintiff was not transferred to a supermax facility. Rather, he was housed in an administrative segregation unit within the same prison facility." *Stroman,* at *3. The court further noted that Stroman "failed to allege that this assignment imposed atypical and significant hardships on him different from the ordinary incidents of prison life." *Id.* Here, Plaintiff was moved from Broad River Correctional Institution to the MSU at Kirkland Correctional Institution[6] and has offered evidence to support his contention that his continued placement in MSU is an atypical and significant hardship.[7] Thus, the undersigned finds that Plaintiff is entitled to due process concerning the procedures for release from MSU and his continued confinement in MSU.

---

[6] Kirkland is a specialized housing unit that houses the most dangerous and violent offenders and is the site for the Maximum Security Unit that serves the state. *See* SCDC website at http://www.doc.sc.gov/institutions/kirkland.jsp.

[7] The undersigned notes that in *Nicholas v. White*, No. 8:051232RBH, 2006 WL 2583765, at *1 (D.S.C. Sept. 7, 2006), the district court ruled on the issue of Plaintiff's due process rights regarding his initial placement in MSU. The court held that "the procedures utilized by the prison afforded the plaintiff due process." *Id.* at *4. To the extent Plaintiff's argument involves his initial placement in MSU, and not his continued placement, his claim is barred.

b.  Constitutionality of SCDC Policy OP-22.11

Plaintiff challenges the constitutionality of the procedures for release from MSU delineated in Defendants' Policy OP-22.11 titled "Maximum Security Unit." ECF No. 13 at 6. Plaintiff contends that this policy violates his due process because it fails to employ a system having multiple levels of review of MSU inmates' confinement that would allow the committee to make decisions regarding an inmate's release from MSU at each level of review. *Id.*  Plaintiff contends that Defendant Ward is solely responsible for making release decisions of inmates housed in MSU and that Ward continued to use charges from which Plaintiff was cleared to continue Plaintiff's placement in MSU.  ECF No. 13 at 6. Defendants argue that the existing due process safeguards provided by SCDC's policies and procedures are constitutionally sufficient and easily equal, if not exceed, the procedures that the Supreme Court found constitutionally sufficient in *Wilkinson*. ECF No. 54-1 at 9.

In *Wilkinson*, the Supreme Court found that the process provided to Ohio inmates assigned to the Ohio State Penitentiary, a super-maximum security prison, complied with due process protections. *Wilkinson*, 545 U.S. at 210.  The Court noted that the Ohio system included a review of the committee's decision regarding inmate placement in MSU by the warden, who was to provide reasons for an approval of an assignment, as well as an additional review by a Bureau vested with final decision-making authority over all inmate assignments in Ohio. *Id.* at 216-17.  After these reviews were completed, the inmate was allowed 15 days to file objections with the Bureau and, only after this 15-day period expired, was the inmate transferred to the facility. *Id.* at 217. Inmates who were transferred were given another review within 30 days of their arrival and, thereafter, were reviewed yearly. *Id.*

Defendants contend that SCDC Policy OP-22.11 "creates numerous layers of due process protection," including a monthly review of an inmate's continued confinement and potential for release that involves a review by the MSU Case Management Committee, the MSU Review Board, and the Director of the Division of Operations. ECF No. 54-1 at 9. Defendants also point to the fact that an inmate's placement in MSU, as well as denial of release, may be appealed directly to the SCDC Director, and then to the Administrative Law Court, the Circuit Courts, and the South Carolina Appellate courts. ECF No. 54-1 at 9-10.

The court agrees with Defendants that the process afforded to Plaintiff satisfied his due process rights. Defendants offer evidence that Plaintiff was told on February 3, 2010 that he had been recommended for release and that the MSU Review Board would be considering his potential release. ECF No. 54-2 at 5. Plaintiff was also informed that he had an opportunity to make a written submission for consideration by the MSU Review Board and the Director of the Division of Operations. *Id.* On February 16, 2010 Plaintiff submitted a letter for consideration by the MSU Review Board. *Id.* The evidence in the record also establishes that Plaintiff's continued confinement in MSU was reviewed by the MSU Case Management Committee, the MSU Review Board, and the Director of the Division of Operations. ECF No. 54-1 at 9. As a prisoner, Plaintiff is not entitled to the process due to persons who remain at liberty. "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Wilkinson*, 545 U.S. at 225. The undersigned, therefore, finds that the process afforded to Plaintiff met with minimal constitutional standards.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's due process claim concerning the release procedures outlined in SCDC Policy OP-22.11.

c. Plaintiff's Continued Confinement in MSU

The recommended finding that the MSU Release Procedure is constitutional on its face does not end the court's inquiry, however. Plaintiff also challenges his continued confinement in MSU, arguing that his former assault and hostage-taking charges were still being used by Defendants at Plaintiff's review hearings to continue Plaintiff's confinement in MSU despite his having been cleared of both of those misconduct charges. ECF No. 13 at 5 (claiming due process rights were violated because of "erroneous continued confinement in segregation"). Defendants aver that this claim is without merit. They contend that Plaintiff was never fully acquitted of active involvement in the January 2004 riots. ECF No. 54-1 at 12. Defendants contend that, although Plaintiff was "found not guilty on the charge of Striking an Employee With/Without a Weapon and his conviction on the charge of Hostage-Taking was reversed by Ward on appeal, his conviction on two additional charges were affirmed." *Id.* Plaintiff was convicted of rioting and inciting/creating a disturbance and those convictions were the basis for Plaintiff's placement in MSU.[8] Those convictions, in conjunction with Plaintiff's "extensive disciplinary history while an MSU inmate[,]" were the bases for his continued placement in MSU in 2007 and in 2010. *Id.* at 12-13.

---

[8] In Plaintiff's 2006 case the court found Plaintiff was afforded due process related to the disciplinary hearing for his placement in MSU, noting that two charges (striking an employee and hostage-taking) had been dropped. *Nicholas*, 2006 WL 2583765 at *4. The court also found no merit to Plaintiff's claims that he was denied due process related to the use of his "convictions" for rioting and creating a disturbance as the basis for the MSU placement. *Id.* at *5. The court held further that under *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), Plaintiff could not bring a §1983 action challenging the validity of the outcome of his disciplinary hearing. *Id.* at *5-6. Such challenges are properly brought as a petition for writ of habeas corpus. *See id.*

In response to this argument, Plaintiff argues that the "record evidence shows that Plaintiff was initially placed in MSU for assault and hostage-taking" and that he had been "cleared of both of those charges." ECF No. 59 at 15. Plaintiff offers Inmate Correspondence memoranda dated February 4, 2007 and March 11, 2010 that state that the MSU Review Committee met and recommended that Plaintiff remain in MSU "based upon [Plaintiff's] active participation in hostage-taking and assault on staff at the January 2004 Broad River C.I. riot and [Plaintiff's] poor adjustment while in MSU." *See* ECF Nos. 59-9 at 8-9. Plaintiff asserts these memoranda support his argument that his continued confinement in MSU is unjustified because it is based on charges of which he has been cleared. The court disagrees. Viewed in the light most favorable to Plaintiff, this correspondence may indicate that, as late as March 2010, prison officials continued to confine Plaintiff to MSU based on charges on which he was initially found "not guilty," ECF No. 59-9 at 5, or charges that were subsequently overturned, *id.* at 6. However, the memoranda also include an additional basis for Plaintiff's confinement—his poor adjustment while in MSU. Furthermore, based on his prior litigation in this court, Plaintiff was aware his placement in MSU was based solely on the charges of rioting and creating a disturbance. *See Nicholas*, 2006 WL 2583765 at *5. Plaintiff has not been cleared of all charges related to his confinement in MSU. Additionally, SCDC Staff Memoranda from 2006 through 2010 show disciplinary infractions resulting in decreases in Plaintiff's placement levels within MSU. ECF No. 59-9 at 11-16.

To the extent Plaintiff argues that he is being punished for past misconduct and should be released from MSU, a §1983 action is not the proper vehicle to challenge his confinement. Because Plaintiff's allegations "necessarily imply the invalidity of the punishment imposed," his

claim is not cognizable under §1983. *Edwards*, 520 U.S. at 648. Therefore, the undersigned recommends granting summary judgment on this claim.

### 3. Eighth Amendment Claims

#### a. Excessive Force

Plaintiff alleges Defendant Reese used excessive force against him when Reese dispersed "tear gas" into Plaintiff's cell without provocation and with punitive intent. ECF No. 13 at 10-12. Defendants argue that, although some facts are disputed regarding the alleged incidents, facts that have been alleged and admitted by Plaintiff support summary judgment for Defendants on these claims. ECF No. 111 at 12-15.

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)). Thus, courts must analyze both subjective and objective components.

For the subjective component, Plaintiff must prove that Defendant Reese used chemical munitions on him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to

cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475 U.S. at 321. The Fourth Circuit has observed that "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Williams*, 77 F.3d at 763 (internal quotation marks omitted). "The fact that pepper spray was used in this incident also does not mandate that [plaintiff's] claim go forward, as the use of mace, tear gas or pepper spray by prison officials is not a *per se* violation of a prisoner's constitutional rights when used appropriately." *Townsend v. Anthony*, No. 0:03-2528-RBH, 2006 WL 2076920, at *9 (D.S.C. July 24, 2006).

The absence of significant injury alone, however, is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, ___ U.S. ___, 130 S. Ct. 1175 (2010). The extent of the injury incurred is one factor indicative of whether the force used was necessary in a particular situation; however, if the force used was applied maliciously and sadistically, liability is not avoided simply because the prisoner "had the good fortune to escape serious harm." *Id.* at 1179. As the Court noted in *Wilkins*, the issue is the nature of the force, not the extent of the injury.

In support of summary judgment, Defendants submit an affidavit from Defendant Reese who attests that Plaintiff refused to obey several orders to stop banging on his window with his lunch tray. ECF No. 54-4 at 2. After warning Plaintiff that he would use chemical munitions if Plaintiff did not stop, Reese administered two small bursts of Sabre Red MK9 Fogger.[9] *Id.*

---

[9] Sabre is a brand of pepper spray used by law enforcement agencies. Sabre Red is Level III formulation that contains 1.33% major capsaicinoids (MC) and 10% oleoresin capsicum (OC). *See* http://www.sabrered.com (last visited July 25, 2012).

Reese stated that Plaintiff continued to bang his tray on the window, Plaintiff was again directed to cease his behavior, and he did not stop. *Id.* Reese then "administered two additional small bursts," and Plaintiff stopped. *Id.* Defendant Reese further attests that Plaintiff's banging on the window was perceived as disruptive to the unit, and Defendant Reese believed that the use of chemical munitions was appropriate to prevent further disruption of the unit using the least amount of force. *Id.* Defendants also offer Plaintiff's medical records that indicate that Nurse Lassiter evaluated Plaintiff after the chemical munitions were discharged and that Plaintiff was found to be in no pain or discomfort following the incident. ECF No. 54-5 at 4.

In response to Defendants' arguments, Plaintiff offers affidavits from himself and fellow inmate Larry K. Smalls. ECF No. 59-9 at 26-27; 59-10 at 1-7. Plaintiff admits to "knocking" on his window with a deodorant bottle, but denies that he tried to break the window or that Defendant Reese gave him any directives prior to deploying the chemical munitions. ECF No. 59-10 at 1-3. Plaintiff also contends that he did not threaten Defendant Reese or anyone else, nor did he pose a threat to Reese, himself, or others. ECF No. 59-10 at 3; 59-9 at 27. Plaintiff further contends that Defendant Reese turned off the water to Plaintiff's sink so that Plaintiff could not wash the chemicals off and denied Plaintiff a shower. *Id.* Plaintiff argues that he was denied medical treatment from 1:00 p.m. to sometime after 6:00 p.m. and that he was forced to remain in his cell and "not only continuously breathe in and inhale mace fumes, but [Plaintiff's] skin was also on fire. It was red hot and burning intensely and so were [Plaintiff's] eyes." ECF No. 59-10 at 4. Plaintiff contends that he told Nurse Lassiter all the symptoms he was experiencing and also asked Nurse Lassiter for cold water to wash. *Id.*

SCDC medical records indicate on June 7, 2010, the same day of the incident, Nurse Lassiter examined Plaintiff three different times after he was gassed. ECF No. 54-5 at 4. Each time Plaintiff showed no S/S [signs or symptoms] of SOB [shortness of breath], no pain or discomfort, and Lassiter noted no signs of acute distress. *Id.* Plaintiff requested a pan to scrub his walls, and he was provided cleaning supplies and soap. When asked, Plaintiff declined the opportunity to return to medical. *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the undersigned finds that there is a genuine issue of fact as to Plaintiff's excessive force claim. While a "limited application of mace may be 'much more humane and effective than a flesh to flesh confrontation with an inmate,'" the undersigned is concerned that the amount of chemical munitions used by Defendant Reese was in a "quantit[y] greater than necessary or for the sole purpose of infliction of pain." *Williams*, 77 F.3d at 763. "[A] prison official's use of chemical munitions on an inmate to prevent disorder generally does not infringe the Eight Amendment's prohibition against cruel and unusual punishment as long as the quantity of chemical munitions is commensurate with the gravity of the occasion." *Robinson v. SCDC*, No. 10-2593-HMH-KDW, 2012 WL 851042, at *7 (D.S.C. Mar. 13, 2012) (citing *Bailey v. Turner*, 736 F.2d 963, 968 (4th Cir. 1984)). Here, the record establishes that Defendant Reese discharged 119 grams of chemical munitions into Plaintiff's cell. ECF No. 54-4 at 4-5. *See Plummer v. Goodwin*, No. 8:07-2741-TLW-BHH, 2010 WL 419927, at *7 n.4 (D.S.C. Jan. 29, 2010) (considering 33.50 grams of chemical munitions "a relatively small quantity and not constitutionally relevant"); *Townsend*, 2006 WL 2076920 at *9 (finding 20 grams of pepper spray a "small amount"). The amount of chemical spray used on Plaintiff supports an inference that the force used by Defendant Reese was

unconstitutionally excessive. Therefore, the undersigned recommends denying Defendants' Motion for Summary Judgment on this claim as to Defendant Reese.

b. Cruel and Unusual Punishment

Plaintiff contends that his confinement in MSU for eight years is excessive, disproportionate to any offense he may have committed, and inflicted capriciously by Defendants in violation of the Eighth Amendment. ECF No. 13 at 7; ECF No. 59 at 24. Plaintiff also contends that the conditions of confinement in MSU inflict unnecessary pain and suffering. ECF No. 59 at 24.

With respect to a conditions-of-confinement claim, the subjective component is deliberate indifference—that is, whether prison officials acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (stating that "deliberate indifference entails something more than mere negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."). More specifically, deliberate indifference occurs when prison officials were "aware of [the] facts from which the inference could be drawn that a substantial risk of serious harm exists," and the officials drew the inference. *Farmer*, 511 U.S. at 837. An extreme deprivation of a prisoner's rights satisfies the objective component of a conditions-of-confinement claim. *Williams*, 77 F.3d at 761.

To the extent Plaintiff alleges he was subjected to cruel and unusual punishment as a result of his confinement in MSU, his claim fails. Plaintiff has failed to introduce evidence that Defendants' decisions to continue his placement in MSU amounted to more than mere negligence. Further, notwithstanding the isolation Plaintiff suffered in the MSU and his allegations that he had limited fresh air activities, ECF No. 15, there is no evidence that he

sustained serious or significant physical or emotional injury as a result of his confinement. Routine discomfort is part of prison life; conditions that are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). The undersigned recommends that Defendants be granted summary judgment on this claim.

c. Medical Indifference

To the extent that Plaintiff also alleges a medical indifference claim regarding the delay in his receiving medical treatment and his inability to wash the chemicals from his skin, Plaintiff's claim should fail. ECF No. 13 at 11-12. The Fourth Circuit has held that to bring a denial of medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id*. Under these principles, Plaintiff has not alleged facts stating any claim actionable under § 1983 regarding his course of medical treatment against the named Defendants in this action. Plaintiff's medical records reveal that Plaintiff was treated after he was gassed. ECF No. 54-5. After the administration of the chemical munitions, Plaintiff was monitored by Nurse Lassiter who assessed him and found that he was not in any type of respiratory distress, and he did not have any pain or discomfort. *Id.* Accordingly, the undersigned recommends that the court dismiss any claims of medical indifference.

### 4. Qualified Immunity

Plaintiff brought this action against Defendants in their "official and personal capacity." ECF No. 13 at 4. Defendants assert that they are entitled to qualified immunity in their individual capacities. ECF No. 54-1 at 20-23. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

Defendants contend that even if the court finds that Plaintiff established a constitutional violation, the unconstitutionality of Defendants' conduct was not clearly established, and Defendants are therefore entitled to qualified immunity.[10]  ECF No. 54-1 at 22. Defendants also argue that Defendant Reese is entitled to qualified immunity because the evidence shows that Reese acted in an objectively reasonable manner under the circumstances.  ECF No. 54-1 at 23.

As to Plaintiff's excessive force claim against Defendant Reese, the undersigned finds that, at the time of the alleged misconduct, it was clearly established that it was a violation of the Eighth Amendment for a prison official to use chemical munitions in quantities greater than necessary or for the sole purpose of infliction of pain.  *Williams*, 77 F.3d at 763.  As discussed above, the undersigned finds that it is a question of fact as to whether Defendant Reese violated this constitutional right. The court cannot determine at the summary judgment phase that Defendant Reese's actions were objectively reasonable for purposes of granting qualified immunity. *See Peoples v. Lloyd*, C/A No. 1:08-3958-CMC, 2010 WL 3951436 (D.S.C. Oct. 7, 2010) (denying defendant's defense of qualified immunity because issues of fact existed as to defendant's use of excess physical force and use of chemical munitions). The undersigned recommends that Defendant Reese be denied qualified immunity.

As to Plaintiff's remaining claims, the record before the court shows that, as to the specific events at issue, Defendants did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the

---

[10] Citing to *Stroman v. Patterson*, 2011 WL 846575 (D.S.C. 2011) and *Nicholas v. White*, 2006 WL 2583765 (D.S.C. 2006), Defendants argue that the issue of whether placement in MSU implicates a liberty interest, and whether the SCDC Policy OP-22.11 afforded Plaintiff due process, were not clearly established in 2007 or 2010.

undersigned recommends that qualified immunity be granted to Defendants Sligh, Gaston, McKie, Ozmint, Byars, Jackson, and Ward on Plaintiff's remaining claims.

B.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for summary judgment "on his claims arising from the denial of due process in connection with the enforcement of MSU Policy No. Op-22.11, a policy that fails to include procedural due process protections required by the U.S. Constitution and federal law." ECF No. 44 at 2.  Because the undersigned finds that MSU Policy No. Op-22.11 provided Plaintiff with minimal constitutional standards of due process, the undersigned recommends that Plaintiff's Motion for Partial Summary Judgment be denied.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 54, be GRANTED as to Plaintiff's due process claims, GRANTED as to Plaintiff's claims of cruel and unusual punishment and medical indifference, and DENIED as to Plaintiff's excessive force claim against Defendant Reese.  The undersigned recommends Plaintiff's Motion for Partial Summary Judgment, ECF No. 44, be DENIED.

IT IS SO RECOMMENDED.

August 3, 2012                                               Kaymani D. West
Florence, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**