IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Habeeb Abdul Malik, #231677, ) | Civil Action No.: 5:11-cv-01064-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| James E. Sligh, Jr.; Jannita Gaston; ) | |
| Bernard McKie; Jon E. Ozmint; Bill ) | |
| Byars; Vaughn Jackson; Robert E. Ward; ) | |
| and Travis Reese, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, a state prisoner with the South Carolina Department of Corrections ("SCDC") proceeding *pro se*, initiated this suit by filing his Complaint on May 4, 2011, which was amended on June 27, 2011, alleging causes of action pursuant 42 U.S.C. § 1983. [Am. Compl., Doc. # 13.] This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Kaymani D. West.[1] In the R&R, the magistrate judge recommends that the Court grant in part, and deny in part, Defendants' Motion for Summary Judgment [Doc. # 54], and that the Court deny Plaintiff's Motion for Partial Summary Judgment [Doc. # 44]. Defendants timely filed objections to the R&R on August 17, 2012 [Defs.' Obj., Doc. # 72], while Plaintiff timely filed objections on August 21, 2012 [Pl.'s Obj., Doc. # 73]. For the reasons discussed herein, the Court rejects the magistrate's R&R to the extent it recommends denial of Defendants' Summary Judgment Motion, and the Court adopts the R&R as modified below.

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge West for pretrial handling.

## Background[2]

Plaintiff alleges violations of his constitutional rights by the named Defendants. Specifically, Plaintiff alleges the following:

- Defendants have violated his due process rights through "erroneous continued confinement" in a maximum security unit ("MSU") at Kirkland Correctional Institution because he was allegedly cleared of the charges that initially prompted his placement in MSU. [*See* Am. Compl., Doc. # 13, at 5, 7.]

- The policy guiding Defendants in their decision-making process regarding the MSU, MSU Policy No. Op-22.11, is unconstitutional. [*Id.* at 6.]

- Plaintiff's confinement within MSU constitutes cruel and unusual punishment. [*Id.* at 6.]

- Defendant Reese used excessive force when he sprayed Plaintiff with chemical munitions during a June 7, 2010, incident, and then denied Plaintiff medical treatment. [*Id.* at 11-12.]

Plaintiff seeks injunctive and declaratory relief with respect to his disciplinary conviction and the SCDC policies, as well as monetary damages.

On November 16, 2011, Plaintiff filed his Motion for Partial Summary Judgment [Doc. # 44], arguing he was entitled to judgment as a matter of law on his claim that MSU Policy No. Op-22.11 "fails to include procedural due process protections required by the U.S. Constitution and federal law." On January 6, 2012, Defendants filed their Summary Judgment Motion [Doc. # 54], arguing that they were entitled to judgment on all grounds and that the case should be dismissed.

---

[2] The facts of this case, including citations to the record, are discussed more thoroughly in the magistrate's R&R. [*See* R&R, Doc. # 70, at 1–4.]

2

## Standard of Review

The magistrate judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) ("*[D]e novo* review [is] unnecessary in . . . situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation."). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins*. Co., 416 F.3d 310 (4th Cir.2005). Furthermore, in the absence of specific objections to the R&R, this Court is not required to give any explanation for adopting the recommendation. *See Diamond*, 416 F.3d at 315; *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

**Discussion**

Both Plaintiff and Defendants filed objections, and this Court will discuss each in turn.

**I.     Plaintiff's Objections**

Plaintiff objects to the magistrate's finding that his due process claim related to his continued confinement in MSU should be dismissed.[3] The Court reiterates that it may only consider objections to the R&R that direct this Court to a specific error. *See* Fed. R. Civ. P. 72(b); *see United States v. Schronce*, 727 F.2d 91, 94 n.4 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841, 845-47 nn.1-3 (4th Cir. 1985). Much of Plaintiff's argument on this point merely rehashes what was argued before the magistrate or states the applicable law of the case. *See, e.g.*, *Weber v. Aiken-Partain*, No. 8:11–cv–02423, 2012 WL 489148, at *2 (D.S.C. Feb. 15, 2012) (noting that objections that merely rehash arguments raised before, and addressed by, the magistrate are insufficient to direct the court to a specific error in the magistrate's proposed findings and recommendations); *Harrison v. Brown*, No. 3:10–cv–2642, 2012 WL 243212, at *1 (D.S.C. Jan. 24, 2012) (same); *Malik v. Sligh*, No. 2:11–cv–01064–RBH, 2011 WL

---

[3] Plaintiff objects only to the magistrate's finding that his continued confinement in MSU does not constitute a due process violation. [Pl.'s Obj., Doc. # 73, at 1–8.] In fact, the header of Plaintiff's objections specifically reference only that section of the magistrate's R&R. [*Id.* at 3.] Further, Defendants, in their objections, attack only the magistrate's findings relating to Plaintiff's excessive force claim (on the basis of both failure to exhaust and the substantive merits). [Defs.' Obj., Doc. # 72, at 1–10 ("Defendants as a whole have **no objections** to the Magistrate Judge's recommendations with respect to the due process claims and the claims of cruel and unusual punishment and medical indifference.")] Thus, this Court has reviewed for clear error the magistrate's findings related to Plaintiff's remaining issues: the constitutionality of MSU Policy No. Op-22.11; medical indifference; and cruel and unusual punishment. This Court finds no clear error in the magistrate's R&R. Further, to the extent Plaintiff's objections may be read as specifically objecting to the magistrate's findings on these remaining claims, the Court holds that, even under *de novo* review, the magistrate correctly addressed Plaintiff's remaining claims and this Court will not address them a second time.

6817750, at *2 (D.S.C. Dec. 28, 2011) (same). After reviewing the magistrate's R&R, the Court finds that these issues were correctly addressed by the magistrate. Nonetheless, out of an abundance of caution, to the extent Plaintiff appears to raise cognizable and specific objections to the magistrate's R&R, those objections are addressed below.

Regarding the due process afforded to inmates held in segregation, the Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of such inmates [in administrative segregation]." *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983) (abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id*. However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). Here, the record is clear, and Plaintiff himself shows, that Plaintiff's placement in MSU was periodically reviewed. [*See* Pl.'s Obj., Doc. # 73, at 3–5]

However, Plaintiff argues that "material issues of fact exist[]" regarding whether Defendants are continuing to keep him confined in MSU based on past events and charges of which he was cleared. [Pl.'s Obj., Doc. # 73, at 2, 4–7.][4] However, the decision to keep Plaintiff confined to MSU was plainly supported by "some evidence," including events

---

[4] Plaintiff relies heavily on two cases in his objections. However, both cases fail to offer Plaintiff any support in the case at bar. In *Hewitt*, 459 at 478 n.9, the Supreme Court held that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates." Further, in *Kelly v. Brewer*, 525 F.2d 394 (8th Cir. 1975), the Eighth Circuit stated that "we agree with the district court that where an inmate is held in segregation for a prolonged or indefinite period of time due process requires that his situation be reviewed periodically in a meaningful way and by relevant standards to determine whether he should be retained in segregation or returned to population." However, as noted herein, Plaintiff was subject to periodic review and there were numerous reasons for his continued confinement.

subsequent to his initial confinement in MSU. First, in a 2006 case Plaintiff brought before this Court, the Court noted that two charges (striking an employee and hostage-taking) had been dropped *but* that Plaintiff's MSU placement was proper based on his "convictions" for rioting and creating a disturbance. *Nicholas v. White*, No. Civ.A. 8:05-cv-1232-RBH, 2006 WL 2583765 at *4 (D.S.C. Sept. 7, 2006). Second, documentation provided by Plaintiff himself indicates that his continued confinement was also based upon his "poor adjustment in the MSU." [*See* SCDC Memo, Doc. # 59-9, at 8, 11–16 (indicating disciplinary infractions through at least 2010).] Third, in his objections, Plaintiff concedes that he did accumulate disciplinary infractions throughout the eight years he has been confined to MSU, "*most* [of which] were non-violent . . . ." [Pl.'s Obj., Doc. # 73, at 3 (emphasis added).] By Plaintiff's own admission, he has incurred at least *some* violent disciplinary infractions throughout his time in MSU. Clearly, Plaintiff's continued confinement in MSU was periodically reviewed, and "some evidence" exist to support that continued confinement. Plaintiff's objection is overruled.[5]

## II. **Defendants' Objections**

Defendants' objections focus solely on the magistrate's finding regarding the excessive force claim[6] against Defendant Reese. [*See* Defs.' Obj., Doc. # 72, at 1–9.] Specifically,

---

[5] To the extent Plaintiff challenges the concept of punitive segregation as "unlawful," the Court notes that there is nothing inherently unconstitutional about punitive segregation. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995) (holding that subjecting a prisoner to punitive administrative segregation did not implicate the due process clause).

[6] Plaintiff claims that on June 7, 2010, he asked Defendant Reese, supervisor of MSU, to see the major of MSU security because "a mentally ill inmate was spreading excrement and blood all over his cell walls and also throwing it onto the wing area." [*See* Am. Compl., Doc. # 13, at 9.] Plaintiff claims that after he attempted to get Defendant Reese's attention by "knock[ing]" on his cell window, Defendant Reese accused him of trying to break the window. [*Id.* at 10.] Plaintiff claims that although he stopped knocking on the window, Defendant Reese nonetheless discharged chemical munitions into his cell. [*Id.* at 10–11.] Plaintiff claims

6

Defendants argue the magistrate erred in determining that Plaintiff had exhausted his administrative remedies under the Prison Litigation Reform Act ("PLRA") of 1995, codified in scattered sections of 11, 18, 28, and 42 U.S.C., and that the magistrate erred in determining that a dispute of fact existed surrounding the substantive merits of Plaintiff's excessive force claim. This Court will begin by discussing whether Plaintiff failed to exhaust his administrative remedies.

Under the PLRA "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff *must* avail himself of all available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "'need not meet federal standards', nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

As the Supreme Court has explained, properly exhausting administrative remedies "means using *all steps* that the agency holds out, and *doing so properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis added and internal citations and quotation marks omitted). "[A] prisoner must file complaints and appeals in the place, *and at the time*, the prison's administrative rules require." *Id*. at 93. ("[A]s a general rule . . . courts should not topple over administrative decisions unless the

---

Defendant Reese's actions constituted excessive force.

administrative body not only has erred, but has erred against objection made at the time appropriate under its practice."). A court may not consider, and must dismiss, unexhausted claims. *Jones v. Bock*, 549 U.S. 199, 211 (2007).

Pursuant to SCDC Policy No. GA-01.12 ("Grievance Policy"), an inmate with a complaint must first attempt to informally resolve his complaint. [*See* Grievance Policy,[7] Doc. # 66-1, at 6–7.] Next, an inmate may file a "Step 1 Grievance" with designated prison staff. [*Id.*] If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." [*Id.*] A Step 2 Grievance must be submitted within five calendar days of receipt of the response to a Step 1 Grievance. [*Id.*] The Grievance Policy contains no mechanism by which an inmate may request discovery or seek an extension of time. [*Id.* at 1–10.]

Here, it is undisputed that Plaintiff filed a Step 1 Grievance relating to his excessive force claim against Defendant Reese in June 2010, and that Plaintiff was notified on July 12, 2010, that the warden denied the Step 1 Grievance. [*See* Hallman Aff., Doc. # 54-3, at ¶ 3; Pl.'s Resp., Doc. # 59, at 2.] Under the Grievance Policy, Plaintiff's Step 2 Grievance was due on July 17, 2010. However, it is also undisputed that Plaintiff submitted his Step 2 Grievance after this deadline and no earlier than July 20, 2010,[8] and that it was returned to Plaintiff as untimely. [*See* Hallman Aff., Doc. # 54-3, at ¶ 3; Pl.'s Resp., Doc. # 59, at 2.]

---

[7] Defendants submitted a copy of the Grievance Policy, and Plaintiff does not object to its authenticity or accuracy. Further, identical versions of this Policy have been submitted to this Court in other cases involving SCDC's grievance procedure.

[8] Defendants contend that the Step 2 Grievance was signed on July 20, 2010, but submitted the following day on July 21, 2010. [*See* Hallman Aff., Doc. # 54-3, at ¶ 3.] Even assuming the earlier date of July 20, 2010, as the submission date, Plaintiff was outside the five-day appeals window.

Further, the parties do not appear to dispute that Plaintiff submitted a form to SCDC officials requesting that the July 17, 2010, deadline be extended and that he be provided certain reports relating to the alleged use of excessive force by Defendant Reese. [*See* Pl.'s Resp., Doc. # 59, at 2; Extension Request, Doc. # 59-1, at 2; Defs.' Obj., Doc. # 72, at 4.] Further, in his Response to Defendants' Motion for Summary Judgment, Plaintiff claims that any delay was not his fault for the following reasons: (1) he submitted the extension on July 13, 2010, before the deadline ran; (2) he sent his Step 2 Grievance along with the July 13, 2010, extension request; and (3) he did not receive a response to his extension (nor was his Step 2 Grievance returned) until July 19, 2010. [*See* Pl.'s Resp., Doc. # 59, at 2–3.]

The Court finds that, in light of the undisputed facts and considering all reasonable inferences in Plaintiff's favor, Plaintiff failed to exhaust his administrative remedies because he untimely filed his Step 2 Grievance. *See Robinson v. Clipse*, 602 F.3d 605, 607 (4th Cir. 2010) (noting that for summary judgment, all *reasonable* inferences must be viewed in a light most favorable to the non-moving party).

First, the Grievance Policy is clear and unambiguous that Plaintiff's Step 2 Grievance was to be filed within five days of Plaintiff's receipt of the Step 1 Grievance - which in this case was July 17, 2010. In fact, in his request for extension, Plaintiff made clear that "you gave me until 7/17/10 to file my Step 2 Grievance . . . ." [Extension Request, Doc. # 59-1, at 2.] Yet Plaintiff did not submit his Step 2 Grievance until at least July 20, 2012. On its face, Plaintiff's Step 2 Grievance was untimely. [Pl.'s Step 2 Grievance, Doc. # 59-2, at 2.]

Second, Plaintiff's argument that he submitted his Step 2 Grievance with his extension request fails on several levels. Nothing in the record, other than Plaintiff's statement, supports that Plaintiff submitted his Step 2 Grievance along with his extension request. In fact, the

evidence in the record points to the contrary. The extension request gives absolutely no indication that a Step 2 Grievance is included or attached. [*See* Extension Request, Doc. # 59-1.] Rather, the extension request itself indicates that Plaintiff has not filed a Step 2 Grievance with the request for extension. [*Id.* at 2.] It states "you gave me until 7/17/10 to file my Step 2 Grievance . . . . However, *I cannot do so at this point* . . . ." [*Id.* (emphasis added).] Moreover, the belated Step 2 Grievance filed by Plaintiff actually references the denied extension and refused discovery; every indication is that it was written after Plaintiff received an answer regarding his extension request, after his extension request was returned, and after the July 17, 2010, deadline.[9] [Pl.'s Step 2 Grievance, Doc. # 59-2, at 2.]. Plaintiff's self-serving contention that he submitted some Step 2 Grievance with his extension request on July 13, 2010, especially in light of the uncontested evidence in the record to the contrary, is simply not enough to create a genuine dispute as to any material fact. *See, e.g., Riley v. Honeywell Technology Solutions, Inc.*, 323 Fed. App'x 276, 278 (4th Cir. 2009) (holding that Plaintiff's "self-serving contentions" that he was treated unfairly "were properly discounted by the district court as having no viable evidentiary support"); *Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) (holding that a self-serving affidavit was insufficient to survive summary judgment); *King v. Flinn & Dreffein Eng'g Co.*, No. 7:09–cv–00410, 2012 WL 3133677, at *10

---

[9] Although Plaintiff makes no such argument, to the extent Plaintiff's filings can be read as arguing that he included a *blank* Step 2 Grievance form along with his extension request, this contention is equally unavailing. The record is devoid of any indication that Plaintiff submitted a Step 2 Grievance form, blank or otherwise, with his extension request. Further, a blank form would be meaningless to SCDC officials as it would be in direct contradiction to the Grievance Policy, which requires such forms be both "completed" and "submitted" within the applicable time period. [*See* Grievance Policy, Doc. # 66-1, at 6.] Assuming, *arguendo*, that Plaintiff submitted, with his extension request, a blank Step 2 Grievance form, he was aware of the impending deadline and could have requested and completed another form before its expiration.

(W.D. Va. 2012) (finding no genuine issue of material fact where only evidence was "uncorroborated and self-serving" testimony) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)).

Third, it is true, as the magistrate discussed, that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Stenhouse v. Hughes*, No. 9:04-23150, 2006 WL 752876 at *2 (D.S.C. March 21, 2006) ("[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies.") However, the case at bar is simply not a situation where prison officials prevented or inhibited an inmate from filing a grievance. *See, e.g.*, *Singh v. Lynch*, 460 Fed. App'x 45. 48 (2nd Cir. 2012) ("Estoppel of a non-exhaustion defense requires some evidence of threats or other conduct [by prison officials] that could reasonably be understood as intended to inhibit [the inmate] from pursuing administrative remedies for the alleged assault.") At most, Defendants merely responded to Plaintiff's extension request after the July 17, 2010, deadline.[10] However, it was Plaintiff who chose to file for an extension (which is not provided for in the Grievance Policy), who chose to request discovery (which is not addressed in the Grievance Policy), and who, when the deadline came, chose to simply wait on a response rather than file a Step 2 Grievance. Plaintiff has only himself, and not Defendants, to blame for any failure to file a

---

[10] It is hardly shocking that Defendants took more than four days to respond to requests that were not recognized under the Grievance Policy. [*See* Grievance Policy, Doc. # 66-1, at 1–10.]

11

timely Step 2 Grievance – a failure which is particularly attributable to Plaintiff given his professed knowledge of the filing deadline and Plaintiff's own prolific litigation history.[11]

Thus, Plaintiff did not file a timely Step 2 Grievance and he has failed to exhaust his administrative remedies regarding his excessive force claim. *See Woodford*, 548 U.S. at 90. Because this Court cannot hear unexhausted claims, it "must" dismiss Plaintiff's claim for excessive force against Defendant Reese. *See Jones*, 549 U.S. at 211. Because this cause of action is being dismissed based upon Plaintiff's failure to exhaust administrative remedies, the Court finds it unnecessary to discuss the merits of Plaintiff's excessive force claim or Defendant Resse's qualified immunity thereto. *See, e.g.*, *Huell v. Ozmint*, No. 1:09–1613, 2010 WL 3257710, at *2 (D.S.C. Aug. 16, 2010) ("Although the [m]agistrate [j]udge alternatively considered the merits of Plaintiff's . . . claim, having determined that Plaintiff failed to exhaust his administrative remedies, the Court declines to reach the merits of that claim nor discuss Plaintiff's related objections to the merits . . . .")[12]

---

[11] According to court records, Plaintiff has filed more than twenty actions in this Court, eight of which were actions pursuant to 42 U.S.C. § 1983.

[12] Although this Court declines to rule on the merits of Plaintiff's excessive force claim, the Court notes that in *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1777–78 (2010), the Supreme Court reversed the Fourth Circuit Court of Appeals and reiterated that a plaintiff could survive summary judgment on a § 1983 claim even without showing a significant injury. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*. at 1778–79 (explaining that blows which cause bruises and a cracked dental plate are not *de minimis* for Eight Amendment purposes). However, the Supreme Court in *Wilkins* went on to state that "not every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id*. at 1178 (internal citations and quotation marks omitted). Here, Plaintiff alleges that Defendant Reese used excessive force when he employed chemical munitions inside of

**Conclusion**

The Court has thoroughly analyzed the entire record, including the Amended Complaint, Motion for Summary Judgment, Motion for Partial Summary Judgment, R&R, objections from all parties, and applicable law. The Court has further conducted the required review of all of the parties' objections and overrules the magistrate's R&R in part – specifically, the Court rejects the magistrate's finding that Defendant's Motion for Summary Judgment should be denied as to Plaintiff's excessive force claim against Defendant Reese. The Court adopts the magistrate's R&R as to all other issues.[13]

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to for Partial Summary Judgment [Doc. # 44] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to for Summary Judgment [Doc. # 54] is **GRANTED** and this case is **DISMISSED** as follows:

(1) Plaintiff's excessive force claim is **DISMISSED** *without prejudice*.

(2) All other claims by Plaintiff are **DISMISSED** *with prejudice*.

---

Plaintiff's cell. Although Plaintiff admits to banging on the window, he claims he complied when directed to cease. Further, Plaintiff's medical records demonstrate that he was seen almost immediately after the incident. [*See* Pl.'s Med. Records, Doc. # 54-5, at 4–5.] According to the medical records, Plaintiff also did not complain of pain or discomfort, and Plaintiff refused to go to medical. [*Id.*] When he later went to medical, he did not complain of pain or discomfort. [*Id.*] Plaintiff, in fact, denied being in any pain. [*Id.*] It does not appear that Plaintiff disputes the authenticity of his medical records, which indicate that to the extent Defendant Reese arguably used excessive force and was not entitled to qualified immunity, the complained-of conduct appears to have "cause[d] no discernible injury." *See Wilkins*, 130 S.Ct. at 1178.

[13] The Court reiterates that because it is not ruling on the merits of Plaintiff's excessive force claim, it does not adopt the portion of the magistrate's R&R discussing the substance of that claim or the applicability of qualified immunity as applied to Defendant Reese. [*See* R&R, Doc. # 72, at 16–20, 22–23.]

**IT IS SO ORDERED.**

                                                s/ R. Bryan Harwell
                                                R. Bryan Harwell
                                                United States District Judge

Florence, South Carolina
September 4, 2012